## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| A.H. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | CAUSE NO. 1:17-cv-4153 |
| THE BOARD OF SCHOOL | ) | |
| COMMISSIONERS FOR THE CITY OF | ) | |
| INDIANAPOLIS d/b/a | ) | |
| INDIANAPOLIS PUBLIC SCHOOLS; | ) | |
| DR. LEWIS D. FEREBEE, | ) | |
| Individually and in his Official Capacity; and | ) | |
| SHANA TAYLOR, | ) | |
| Individually and in her Official Capacity, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT FOR DAMAGES AND JURY TRIAL DEMAND

Comes now Plaintiff, A.H.,[1] and for his *Complaint for Damages and Jury Trial Demand* against Defendants to recover damages and other relief resulting from the Defendants' tortious conduct and violations of A.H.'s rights under the United States Constitution and Code. This action is against The Board of School Commissioners of the City of Indianapolis d/b/a Indianapolis Public Schools (hereinafter referred to as "IPS"), Dr. Lewis D. Ferebee ("FEREBEE"), in his individual and official capacities, and Shana Taylor ("TAYLOR"), in her individual and official capacities.

---

[1] Because of the nature of the allegations contained herein, including Plaintiff's status as a minor at all relevant times referenced herein, Plaintiff files this Complaint under the abbreviations "A.H." in the caption, protecting his privacy as a victim of sexual abuse.

## **Nature of Complaint**

1.      During the 2015-2016 school year, A.H. attended Positive Supports Academy in the Longfellow Building, which is also known as Longfellow Alternative School (hereinafter "Positive Supports Academy"). Positive Supports Academy is an alternative school in the IPS school district.

2.      A.H. was sixteen (16) years old at the start of the 2015-2016 school year. During the school year, TAYLOR, an IPS employee, used her position as the school counselor at Positive Supports Academy to sexually abuse and harass A.H. on school premises throughout a five-month period.

3.      A.H. suffered sexual abuse, harassment, and discrimination and he seeks damages for the harm wrought by IPS's failure to keep him safe in his school environment, and its failure to sufficiently supervise and train its officials and staff at Positive Supports Academy, as well as for the harm caused by the sexual abuse, harassment, and discrimination. IPS authorized TAYLOR to perform school counselor duties with Positive Supports Academy students. In her role as school counselor, TAYLOR was in a position of trust with IPS students. IPS controlled its staff members, including TAYLOR as its school counselor.

4.      IPS's own negligence and the negligent hiring, retention, and supervision of its subordinates resulted in a failure to implement safeguards to protect its students from predatory sexual behavior. IPS's counseling and guidance programs function as important protections against abuse and harassment, and IPS failed to train its officials and staff to recognize and report abuse, discrimination, and harassment by the school counselor or other staff members and employees. Consequently, TAYLOR was given free reign over IPS's counseling and guidance programs at Positive Supports Academy which she used to sexually abuse, harass, and injure

2

A.H. The IPS counseling program's abuse and harassment were harmful to the interests of A.H. and, upon information and belief, other Positive Supports Academy students.

## I.       Jurisdiction and Venue

5.      Plaintiff, A.H. was a student of IPS residing in Marion County at all relevant times to this action.

6.      Defendant Indianapolis Public Schools is the corporate name of a public school system located in Indianapolis, Indiana.

7.      Defendant The Board of School Commissioners of the City of Indianapolis, the governing body of IPS, is located in Indianapolis, Indiana.

8.      Defendant Dr. Lewis Ferebee was the Superintendent of IPS and resided in Marion County, Indiana at all times relevant to this action.

9.      The Court has personal jurisdiction over all parties.

10.     This action is brought pursuant to 42 U.S.C. § 1983 and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, *et seq.* (hereinafter "Title IX").

11.     This Court has original subject matter jurisdiction for the federal questions presented herein, pursuant to 28 U.S.C. § 1331.

12.     Plaintiff further invokes the supplemental jurisdiction of this Court to hear and decide Plaintiff's claims arising under Indiana state law.

13.     Venue is proper in this Court and Division, under 28 U.S.C. § 1391(b), in that a substantial part of the events or omissions giving rise to this action occurred in the County of Marion, State of Indiana, which is located in the Indianapolis Division of the Southern District of Indiana.

4823-3384-3284, v. 1

## II.    Parties

14.    At all times relevant herein, A.H. was a minor child and resident and citizen of the City of Indianapolis, County of Marion, and State of Indiana.

15.    At all times relevant herein, A.H. was a Black/African-American male student enrolled at Positive Supports Academy.

16.    At all times mentioned herein, the Defendant, The Board of School Commissioners of the City of Indianapolis, was the corporate name as well as the governing body of a public-school corporation created by the State of Indiana pursuant to Indiana Code § 20-25-3, commonly known as the Indianapolis Public Schools, to govern, manage, and control various public schools, including Positive Supports Academy. IPS operates within the State of Indiana, County of Marion, and City of Indianapolis

17.    At all relevant times herein, IPS was a recipient of federal funds and subject to the terms and conditions of Title IX.

18.    At the time A.H. was sexually abused, harassed, and discriminated against, as described herein, Defendant, FEREBEE, was an administrator licensed in the State of Indiana, was acting under color of state law and as an agent and employee of IPS, and was Superintendent of IPS.

19.    At all times relevant herein, TAYLOR was a school counselor licensed in the State of Indiana, and was acting under color of state law and as an agent and employee of IPS as a school counselor at Positive Impacts Academy.

## III.    Facts

20.    At all times relevant herein, the acts and/or omissions of IPS officials and employees recounted herein were performed and/or omitted by and through IPS agents,

4823-3384-3284, v. 1

employees, servants and/or representatives acting within the course and scope of their employment and under the color of law.

**IPS was aware of TAYLOR's inappropriate relationships with students.**

21.     Prior to and during the period of time which TAYLOR harassed and sexually abused A.H., IPS was aware of TAYLOR's misconduct and inappropriate interactions with Positive Supports Academy students.

22.     Upon information and belief, soon after the 2015-2016 school year began, Positive Supports Academy and/or IPS officials detected a pattern of students gathering in TAYLOR's office without a valid reason for being in her office.

23.     TAYLOR's office was originally located on an upper level of the Positive Supports Academy building, away from the majority of school officials and employees, and the location enabled her to host male students in her office.

24.     Upon information and belief, IPS discovered a pattern of male students missing class only to be found in TAYLOR's office or with TAYLOR.

25.     Positive Supports Academy administrators discovered TAYLOR had provided a staff laptop to a male student and subsequently confiscated the gifted laptop from the student.

26.     Upon information and belief, upon discovering this pattern, Positive Supports Academy officials moved TAYLOR's office to the main level of the Positive Supports Academy building, two doors away from the school principal's office.

27.     Upon information and belief, school officials did not take any other remedial measures and failed to adequately investigate TAYLOR's conduct.

28.     By failing to take any other remedial measures or to investigate TAYLOR's conduct, the school was aware of TAYLOR's misconduct, yet chose to turn a blind eye.

4823-3384-3284, v. 1

**TAYLOR targeted A.H. and began grooming him.**

29.     While performing her employment duties, TAYLOR engaged in a course of conduct that included providing special treatment and gifts to and other inappropriate behavior toward A.H. for the purpose of gaining his trust and confidence and conditioned A.H. to trust her. This conduct is referred to hereinafter as "grooming."

30.     On or about September of 2015, TAYLOR approached A.H. after a student body meeting and introduced herself.

31.     Days later, TAYLOR approached A.H. in the school cafeteria and asked him for his Facebook username.

32.     Upon information and belief, and based on statements TAYLOR made to A.H., TAYLOR targeted A.H. because he is a Black male.

33.     That night, or shortly thereafter, TAYLOR sent a Facebook "friend request" to A.H., and began sending inappropriate messages to A.H. through Facebook, wherein she expressed interest in getting to know him.

34.     Upon information and belief, TAYLOR communicated with other Positive Supports Academy students on Facebook.

35.     On or about the day after TAYLOR sent her friend request to A.H., A.H. was involved in an incident at school and IPS issued A.H. an out-of-school suspension.

36.     Through the course of her employment, specifically her status as the school counselor, TAYLOR learned that A.H. had been suspended from school and contacted him.

37.     TAYLOR sent a message to A.H., in which she told him that she heard he was suspended and offered to bring him food from a fast food restaurant.

38.     Upon information and belief, during school hours on the first day of A.H.'s suspension, TAYLOR left school and went to A.H.'s home.

39.     TAYLOR told A.H. she was coming from a counseling session at another student's home and stopped by his house before returning to school.

40.     TAYLOR brought A.H. a fast food meal to his home and asked him if he wanted to smoke marijuana.

41.     TAYLOR retrieved marijuana from her car and smoked it with A.H.

42.     Then, TAYLOR and A.H. engaged in sexual intercourse.

**TAYLOR used her position as school counselor to harass and sexually abuse A.H.**

43.     On subsequent occasions during the 2015-2016 school year, TAYLOR went to A.H.'s classroom during school hours and requested that A.H.'s teachers excuse him from class for counseling sessions.

44.     During the purported counseling sessions with A.H., TAYLOR turned the conversation to sex and made sexual remarks.

45.     Instead of providing A.H. with counseling, TAYLOR would bring A.H. to her office to engage in sexual intercourse and/or oral sex with him.

46.     TAYLOR performed oral sex on A.H. and had sexual intercourse with him during the counseling sessions, which occurred inside the school and during school hours.

47.     TAYLOR conducted extended and repeated counseling sessions with A.H., and, upon information and belief, other male students, with these counseling sessions occurring on the school premises and behind the closed locked door and covered window of TAYLOR's office.

48.     On certain days, TAYLOR would remove A.H. from his classroom two (2) or more times in the same day for the purpose of sexual intercourse.

7

49.     Upon information and belief, IPS's lack of oversight and supervision over TAYLOR, and its rules and policies, or lack thereof, allowed TAYLOR to take A.H. off campus frequently; and on at least one occasion was involved in a vehicle accident while pulling into the school parking lot with A.H. in her car.

50.     In addition to Facebook messages, TAYLOR communicated with A.H. via mobile telephone text messaging.

51.     Upon information and belief, TAYLOR would use text messages to convince A.H. to come to her office during the school day.

52.     Upon information and belief, during the school day, TAYLOR would leave school grounds to meet with A.H.

53.     Upon information and belief, TAYLOR, based on information she obtained as school counselor, knew when A.H. was suspended and sent him text messages to coordinate off-campus meetings.

54.     TAYLOR also sent sexually explicit photographs of herself to A.H. via text message, including but not limited to photographs of:

A.     TAYLOR's vagina;

B.     TAYLOR's breasts;

C.     TAYLOR's buttocks; and

D.     TAYLOR in a state of full nudity.

55.     TAYLOR continued grooming A.H. by showing him attention and giving him gifts during and after school hours:

A.      Upon information and belief, Positive Supports Academy did not allow outside food and drinks; but TAYLOR openly brought fast food to school for A.H.;

B.      Upon information and belief, Positive Supports Academy did not allow students to bring their mobile telephones into the school building; yet TAYLOR regularly smuggled A.H.'s phone onto school grounds for him;

C.      TAYLOR took A.H. to the shopping outlets in Edinburgh, Indiana, and purchased new shoes for him;

D.      TAYLOR purchased liquor and marijuana for A.H. and used these substances with him;

E.      On numerous occasions, TAYLOR would pick A.H. up at the bus stop and even let A.H. drive her car to school, even though A.H. did not have a valid driver's license;

F.      On numerous occasions, A.H. would drop TAYLOR off in front of the school building and then park her car; and

G.      Took A.H. to her home in Johnson County for the purpose of having sexual intercourse with him.

56.     It was during one of these meetings with A.H. that TAYLOR told him that she desired him because he was Black.

**TAYLOR's abuse and harassment of A.H. had negative consequences on his education.**

57.     A.H. received numerous suspensions throughout the 2015-2016 school year for absences.

58.     Upon information and belief, IPS and its principals at Positive Supports Academy identified A.H.'s unauthorized absences through their use of the school's camera system, yet failed to investigate the underlying cause of his absences.

59.     Upon information and belief, IPS punished A.H. for the absences which were caused by his meetings with TAYLOR, and these punishments included out-of-school suspensions.

60.     In February of 2016, TAYLOR confronted A.H. about a relationship he was having with a female student.

61.     TAYLOR was jealous of the relationship and told A.H. that she was recommending to Positive Supports Academy that A.H. be placed on a half-day schedule.

62.     Upon information and belief, half-day schedule isolated students from their peers by placing them in a single classroom from approximately 7:30 a.m. to 12:30 p.m. and then sent home. Half-day schedule also meant removing these students from educational services and opportunities provided by Positive Supports Academy and provided instruction solely through an online platform called Ingenuity.

63.     Upon information and belief, TAYLOR made the recommendation to Positive Supports Academy officials that A.H. should be placed on half-day schedule.

64.     TAYLOR's conduct negatively impacted A.H.'s education.

**IPS officials and employees failed to immediately report
TAYLOR's abuse and harassment after it was reported by A.H.'s mother.**

65.     On or about February 17, 2016, Janet H. ("JANET"), A.H.'s mother, learned that her son was being sexually abused and harassed by a woman at Positive Supports Academy, who was later identified as TAYLOR.

4823-3384-3284, v. 1

66.     JANET immediately contacted Positive Supports Academy officials to inform them of the abuse and harassment.

67.     JANET provided officials with evidence of TAYLOR's conduct, including sexually explicit text messages and pictures that TAYLOR had sent to A.H.

68.     Upon information and belief, JANET initially reported the information to Beryl Borel, an IPS employee.

69.     JANET subsequently met with school administrators at Positive Supports Academy.

70.     After receiving notice of the abuse and harassment, school administrators failed to immediately report the abuse and harassment to DCS or law enforcement, as required by Indiana Code § 31-33-5-1.

71.     Upon information and belief, JANET's initial reporting of the sexual abuse and harassment to Positive Supports Academy, along with the subsequent meeting with IPS officials and Positive Supports Academy staff members concerning the same, caused a flurry of telephone calls and conversations between and among IPS leadership and staff; however, no one took any immediate action to report the abuse and harassment. Upon information and belief, these communications involved, but were not limited to:

   A.     Positive Supports Academy principals and staff members;

   B.     IPS Director of Student Services (Deb Leser);

   C.     IPS Human Resources Director (Lela Tina Hester);

   D.     IPS Deputy Superintendent (Wanda Legrand);

   E.     IPS Chief Strategist (Le Boler);

   F.     IPS Human Resources officer (Sandra Bombic);

11

G.      IPS Superintendent (FEREBEE)[2]; and

H.      IPS Title IX Coordinator and case manager (Shalon Dabney).

72.      Following the meeting with leadership at Positive Supports Academy, IPS officials ordered Positive Supports Academy administrators not to inform DCS or law enforcement of TAYLOR's abuse and harassment.

73.      According to court records and media reports, IPS's Human Resources Director, Lela Tina Hester ("Hester") instructed Positive Supports Academy administrators not to get the police involved, stating that "the school police should stay out of it so that [TAYLOR] is not charged and [IPS] can handle from [a human resources] perspective[.]"[3]

74.      According to court records, and upon information and belief, school administrators followed Hester's instructions.[4]

75.      Instead of reporting the abuse and harassment to DCS and/or law enforcement, Hester and other IPS officials proceeded to handle TAYLOR's abuse and harassment internally, treating it as a human resources matter.

76.      Instead of reporting the abuse and harassment to DCS and/or law enforcement, IPS conducted an interview with TAYLOR regarding the abuse and harassment.

77.      IPS's decision to perform an internal interview and investigation, instead of reporting the abuse to DCS and/or law enforcement, placed A.H.'s safety and security at risk.

---

[2] Upon information and belief, and notably, FEREBEE worked at Durham Public Schools in North Carolina with Legrand and Boler prior to starting at IPS, and when he arrived at IPS he coordinated the addition of Legrand and Boler to his staff at IPS.
[3] Melissa Mahadeo, *IPS Supt. Ferebee goes on record in closed-door meeting about Shana Taylor case*, THE INDY CHANNEL (Jun. 25, 2016), *available at* http://www.theindychannel.com/news/local-news/ips-supt-ferebee-goes-on-record-in-closed-door-meeting-about-shana-taylor-case; Verified Compl. for Damages & Injunctive Relief & Req. Trial by Jury at ¶ 88, *Leser vs. Indianapolis Public Schools*, No. 1:16-cv-2044 (S.D. Ind.).
[4] Verified Compl. at ¶ 88, *Leser vs. Indianapolis Public Schools*, No. 1:16-cv-2044.

78.     IPS's course of action provided notice to TAYLOR that allegations of abuse had been made without implementing any reasonable safeguards to protect A.H.

79.     Upon information and belief, TAYLOR went to A.H.'s home immediately after her interview with IPS in an attempt to interfere with or influence A.H.

80.     IPS and Positive Supports Academy officials did not report the abuse and harassment until February 23, 2016, six (6) days after first receiving notice of the situation.

81.     According to an IPS statement, IPS emphasized that TAYLOR was barred from Positive Supports Academy. The reasonableness of IPS's actions is contradicted by TAYLOR's attempted confrontation with A.H. following her meeting with IPS.

82.     Upon information and belief and according to media reports, IPS did not make the decision to report TAYLOR's abuse until after media outlets began to report on the situation.[5]

83.     Immediately after officials finally reported TAYLOR's abuse and harassment, media coverage drastically increased, and IPS's mishandling of its obligations became public knowledge.

84.     According to media reports, FEREBEE called the situation a "clear case of incompetence," and stated that the six (6) day delay in reporting the abuse and harassment was "unacceptable."[6]

85.     To make matters worse, upon information and belief, IPS approved A.H.'s placement in the half-day schedule *after* JANET reported TAYLOR's abuse on February 17,

---

[5] Marisa Kwiatkowski, *Exclusive: Emails reveal more detail in IPS' handling of abuse case*, INDYSTAR, (May 26, 2016), *available at* http://www.indystar.com/story/news/education/2016/05/26/emails-reveal-more-detail-ips-handling-abuse-case/84932148/

[6] Marisa Kwiatkowski, *IPS superintendent calls delay in reporting abuse 'clear case of incompetence'*, INDYSTAR, (March 4, 2016), *available at* http://www.indystar.com/story/news/education/2016/03/04/ips-superintendent-discuss-investigation-into-allegations-serious-employee-misconduct/81315150/

2016, effectively punishing A.H., removing him from educational opportunities, and effectuating the half-day schedule that had been orchestrated by his abuser.

86.     IPS's decision to place A.H. in half-day schedule was not based on A.H.'s best interest in regard to his education or development.

**IPS had duties and obligations to protect A.H. and provide a safe environment**

87.     IPS admits that:

A.     it owes a duty of care to its students to provide for their safety and security;

B.     it failed to immediately report TAYLOR's sexual abuse, discrimination, and harassment to DCS;

C.     the TAYLOR incident is disturbing;

D.     the TAYLOR incident was not handled well by far too many people; and

E.     the TAYLOR situation was a clear case of incompetence.

88.     Upon information and belief, school officials had, or should have had, a reasonable belief that TAYLOR's behavior posed a risk to its students based on her pattern of inappropriate behavior and grooming male students.

89.     The officials' decision to move TAYLOR's office neither remedied TAYLOR's conduct nor prevented further inappropriate conduct between TAYLOR and male students, as TAYLOR's sexual abuse and harassment of A.H. continued until February of 2016.

90.     Upon information and belief, school officials failed to implement standards and policies designed to prevent sexual abuse, harassment and other inappropriate conduct between school employees and students.

14

91.     Upon information and belief, school officials failed to provide teachers and school employees with additional training to help identify potential warning signs of sexual abuse or harassment.

92.     Upon information and belief, school officials failed to adequately supervise the school environment at Positive Supports Academy.

93.     Upon information and belief, had IPS and FEREBEE implemented adequate supervision of the Positive Supports Academy, including supervision over its school counseling program, TAYLOR's conduct would have been detected as obvious signs of grooming.

94.     According to the IPS website, Positive Supports Academy serves students in grades six through twelve (6-12).[7] Specifically, it is an alternative school serving students that had demonstrated social or behavioral difficulties in the traditional classroom setting.

95.     The Positive Supports Academy daily curriculum specifically includes ensuring "student counseling and academic support."[8]

96.     IPS alternative schools strive to help students improve their academic skills, become more responsible, develop self-control, and modify behavior.

97.     Upon information and belief, IPS recognized that A.H. was having difficulty in the traditional classroom setting and it assigned him to Positive Supports Academy.

98.     Unlike A.H.'s previous school, Positive Supports Academy had heightened security measures in place, such as metal detectors.

---

[7] INDIANAPOLIS PUBLIC SCHOOLS, ALTERNATIVE EDUCATION PROGRAMS, available at https://www.myips.org/Page/34369 (last visited Oct. 16, 2017); INDIANAPOLIS PUBLIC SCHOOLS, ALTERNATIVE EDUCATION PROGRAMS, *Positive Supports Academy*, available at https://www.myips.org/site/default.aspx?PageType=3&ModuleInstanceID=51031&ViewID=7b97f7ed-8e5e-4120-848f-a8b4987d588f&RenderLoc=0&FlexDataID=35845&PageID=34369 (last visited Oct. 16, 2017) (hereinafter Positive Supports Academy IPS webpage).
[8] Positive Supports Academy IPS webpage, *supra* note 7.

99.     Upon information and belief, Positive Supports Academy had security cameras in its building, which allowed principals and other administration staff members the opportunity to monitor and supervise activity throughout the building.

100.    The Positive Supports Academy's curriculum provides:

    A.     computer-based and classroom instruction;

    B.     academic skill development;

    C.     behavioral support; and

    D.     counseling, conflict resolution, and character development.[9]

101.    Positive Supports Academy and IPS have a duty to ensure student safety and security.

102.    Positive Supports Academy and IPS have an obligation to provide a safe, non-hostile environment for students to learn.

**IPS had additional policies and duties regarding the student counseling program**

103.    IPS policy required a planned program of counseling as an integral part of its educational program.[10]

104.    School counselors are also required to perform certain statutory duties, including, *inter alia*, their obligation to perform an annual review on a student's graduation plan, to monitor the student's progress, and provide career and education services.[11]

105.    IPS authorized and empowered its school counselors to be in a position of trust with its students.

---

[9] Positive Supports Academy IPS webpage, *supra* note 7.
[10] IPS, Bylaws and Policies, Guidance and Counseling, No. 2411 (Sep. 26, 2006).
[11] Ind. Code § 20-30-4-6 (2015).

106.    The Indiana Department of Education has adopted the American School
Counselor Association's Ethical Standards for School Counselors, which:

   A.    "[s]erve as a guide for the ethical practices of all school counselors,
supervisors/directors of school counseling programs and school counselor educators . . .";

   B.    "[p]rovide support and direction for self-evaluation, peer consultation and
evaluations regarding school counselors' responsibilities . . .";

   C.    "[i]nform all stakeholders, including students, parents/guardians, teachers,
administrators, community members and courts of justice of best ethical practices, values
and expected behaviors of the school counseling professional."[12]

107.    Under these Ethical Standards, schools and their counselors owe duties and
responsibilities to students, which include, *inter alia*:

   A.    supporting student development;

   B.    confidentiality;

   C.    guidance on academic, career, and social or emotional planning;

   D.    managing boundaries, both in assisting the student in development and
management of relationship boundaries and in managing the counselor-student
relationship; and

   E.    ensuring student safety, especially for underserved and at-risk student
populations.[13]

---

[12] AMERICAN SCHOOL COUNSELOR ASSOCIATION, *ASCA Ethical Standards for School Counselors* (2016), available at https://www.doe.in.gov/student-services/student-assistance/legal-and-ethical (last visited Oct. 16, 2017) (hereinafter ASCA Ethical Standards).
[13] ASCA Ethical Standards.

108.   Under these Ethical Standards, IPS school administrators and supervisors owe duties and responsibilities to students concerning its school counselor programs, which include, *inter alia*:

    A.   providing adequate resources to school counselor programs;

    B.   ensuring that school counselor programs meet the needs of their students;

    C.   providing appropriate supervision and training; and

    D.   eliminating conditions or practices that are illegal or interfere with educational services provided to students.[14]

109.   IPS required FEREBEE to perform additional duties and responsibilities, which included, *inter alia*, implementation of the counseling and guidance program.[15]

110.   Upon information and belief, IPS and its officials and employees represented to the students that the school counselor program was in place to help the students with, *inter alia*, their counseling, guidance, stress relief, and problem-solving needs.

111.   Upon information and belief, IPS and its officials and employees required or encouraged, depending on the circumstances, students to participate in the school counselor and guidance counselor programs.

112.   Upon information and belief, IPS and FEREBEE failed, *inter alia*, (i) to implement monitoring and supervision duties in the counseling and guidance programs at Positive Supports Academy; (ii) to train its officials, teachers, and staff on sexually abusive, harassing, and discriminatory behavior by school counselors or other staff members; and (iii) to immediately report sexual abuse that occurred at Positive Supports Academy.

---

[14] ASCA Ethical Standards.
[15] IPS, Bylaws and Policies, Guidance and Counseling, No. 2411 (Sep. 26, 2006).

18

113.    Upon information and belief, IPS also failed to establish rules and requirements providing safeguards to students during counseling sessions.

114.    The counseling and guidance programs at Positive Supports Academy involved practices or conditions that were damaging or harmful to A.H. and, upon information and belief, to other Positive Supports Academy students, including, but not limited to, closed-door meetings with students, sexual harassment, discrimination, and abuse.

115.    Student counseling sessions took place inside the school and during school hours. Further, upon information and belief, IPS allowed or authorized its school counselor to conduct counseling sessions with students at their homes during school hours.

116.    Upon information and belief, under IPS's control and authorization, IPS's employee conducted counseling sessions with students in the students' homes.

117.    Upon information and belief, as early as September of 2015, IPS was aware of inappropriate relationships between TAYLOR and Positive Supports Academy students, including but not limited to the following occurrences:

     A.    Students would skip class and regularly congregate in TAYLOR's office;

     B.    TAYLOR contributed to and was responsible for students' unauthorized absences;

     C.    TAYLOR provided gifts or special treatment to male students;

     D.    TAYLOR provided a male student with a staff computer, which was confiscated by an IPS official; however, IPS administrators failed to investigate or take any other corrective action to address TAYLOR's behavior;

     E.    TAYLOR regularly removed A.H. and, upon information and belief, other male students, from the classroom setting; and

F.     TAYLOR regularly met with A.H., and upon information and belief other

male students, during school hours in her office with the door locked and the window

covered or blocked.

### Consequences of TAYLOR's abuse and harassment.

118.   Widespread media coverage of TAYLOR's conduct and IPS's mishandling of its

obligations caused A.H. to suffer humiliation among his fellow students and A.H. struggled with

anger management after the abuse and harassment came to light.

119.   IPS's failures and TAYLOR's abusive relationship with A.H., including her

retaliation and sexual abuse, harassment, and discrimination, have caused A.H. to suffer

physically and emotionally and harmed his education and development.

120.   TAYLOR's conduct caused A.H. to be absent from class and this had a

detrimental impact on his education and his ability to take advantage of the educational

opportunities afforded to him as a student.

121.   Upon information and belief, IPS's failures allowed TAYLOR to continue her

course of conduct and persist in her sexual harassment, discrimination and abuse against A.H. for

months.

122.   Upon information and belief, school officials' deliberate indifference to

TAYLOR's obvious misconduct with male students resulted in continuing sexual abuse and

harassment against A.H. and other male students.

123.   Upon information and belief, IPS did not have policies or training in place at

Positive Supports Academy to assist its teachers and staff members in recognizing grooming or

other warning signs of abuse or harassment involving students.

4823-3384-3284, v. 1

124.     Had IPS implemented proper procedures and training at Positive Supports Academy, IPS officials or staff members would have been trained to identify the warning flags that TAYLOR's conduct should have raised.

125.     Upon information and belief, had IPS implemented rules and policies concerning its counseling program at Positive Supports Academy, including the supervision thereof and training related to sexual abuse, harassment, and discrimination involving students, TAYLOR's conduct would have been discovered sooner or prevented.

## V.     Claims

### COUNT I – TITLE IX CLAIM AGAINST IPS

126.     Plaintiff hereby repeats and alleges paragraphs 1 through 125 and incorporates the same as if fully set forth herein.

127.     A.H. belongs to a protected group under Title IX.

128.     As described herein, A.H. was subjected to quid pro quo and hostile environment sexual harassment because of his gender and race.

129.     As described herein, A.H. was also subjected to sexual abuse and discrimination because of his gender and race.

130.     The harassment, sexual abuse, discrimination and its aftermath were so pervasive that it altered, detracted from, and undermined the conditions of A.H.'s education, and denied him equal access to IPS resources and opportunities.

131.     IPS officials, principals and staff at Public Supports Academy restricted or delayed reporting of TAYLOR's sexual abuse.

132.     IPS also had knowledge of TAYLOR's inappropriate behavior with students.

133.     TAYLOR's misconduct and discrimination against A.H. culminated in obvious grooming and regular closed-door meetings.

134.     IPS officials, principals, and staff at Public Supports Academy had authority to institute corrective measures but failed to do so.

135.     IPS officials, including its principals at Positive Supports Academy, had notice of TAYLOR's inappropriate relationship and conduct with A.H. yet failed to take reasonably responsive measures or follow express Indiana law.

136.     IPS officials condoned TAYLOR's misconduct through its policies, customs and/or practices of empowering TAYLOR with authority while overlooking or disregarding TAYLOR's conduct and failing to implement safeguards.

137.     IPS officials were indifferent towards TAYLOR's misconduct and A.H.'s safety, as they failed to report the abuse and harassment to DCS or law enforcement as required by law, and instead interviewed TAYLOR for their own investigation.

138.     IPS officials intentionally failed to immediately report TAYLOR's abuse and harassment to DCS or law enforcement, and instructed administrators at Positive Supports Academy not to immediately report the misconduct.

139.     IPS's decision to interview TAYLOR internally, instead of contacting DCS or law enforcement, gave TAYLOR notice of the allegations and an opportunity to go to A.H's house in an attempt to dissuade him from cooperating with any investigations.

140.     As a result of the aforementioned wrongful conduct, A.H. experienced anger and humiliation, suffered the loss of academic and career opportunities, and suffered other injuries and damages, some of which are permanent in nature.

## COUNT II – 42 U.S.C. § 1983 CLAIMS AGAINST IPS

141.    Plaintiff hereby repeats and alleges paragraphs 1 through 125 and incorporates the same as if fully set forth herein.

142.    IPS failed to train its teachers, principals, and other staff at Positive Supports Academy regarding sexual abuse, sexual harassment, and other misconduct involving students.

143.    Additionally, IPS, and its officials, failed to control and supervise the guidance and counseling program at Positive Supports Academy.

144.    Inconsistent and disproportional practices existed at Positive Supports Academy, and A.H. was harmed by said inconsistencies and practices.

145.    For a period of six (6) months during the 2015-2016 school year at Positive Supports Academy, and in the course of TAYLOR's scope of employment as school counselor:

A.    TAYLOR removed A.H. from his classroom on numerous occasions for the purpose of sexual harassment, sexual abuse, and other misconduct;

B.    TAYLOR regularly met with A.H. in closed-door meetings with the door locked and windows blocked or covered;

C.    Upon information and belief, TAYLOR regularly met in her office with other Positive Supports Academy Black male students with the door locked and windows blocked or covered;

D.    TAYLOR accessed A.H.'s student information through the course of her duties as school counselor and used the information to isolate and manipulate A.H.;

E.    TAYLOR groomed A.H., showing him special attention and providing him with special favors and gifts;

F.  Upon information and belief, TAYLOR directed special attention to other Black male students;

G.  TAYLOR sexually harassed and abused A.H. and at least one (1) other student;

H.  TAYLOR's sexual harassment, abuse and misconduct occurred during school hours and on school premises, specifically in her office;

I.  Upon information and belief, TAYLOR had the authority to and did conduct counseling sessions with students off school premises and at their residences;

J.  IPS punished A.H. for missing class on occasions that A.H. was under the control of TAYLOR, and said punishment included out-of-school suspensions;

K.  IPS received information about TAYLOR's misconduct and failed to report it to DCS for six (6) days;

L.  IPS officials directed other IPS officials and staff members not to involve law enforcement or DCS in the investigation of TAYLOR so that the Human Resources department could conduct its own internal investigation;

M.  Upon information and belief, IPS placed A.H. on half-day schedule after TAYLOR's abuse and harassment was reported to Positive Supports Academy;

N.  Upon information and belief, IPS placed A.H. on half-day schedule without considering what was in A.H.'s best interest.

146.   TAYLOR sexually abused, harassed, and otherwise discriminated against A.H. because of his gender and race in violation of A.H.'s right to equal protection pursuant to the Fourteenth Amendment to the United States Constitution, and in violation of A.H.'s right to be free from sexual abuse pursuant to the Fourteenth Amendment to the United States Constitution.

147.    IPS and its officials promoted, allowed, or authorized school policies and practices that enabled TAYLOR to victimize male students.

148.    IPS and its officials failed to implement and/or enforce school policies and practices that would have prevented or identified TAYLOR's victimization of male students.

149.    IPS and its officials allowed TAYLOR to operate the school counseling and guidance programs without supervision or oversight, creating widespread policies, customs, or practices that caused injuries to A.H. and, upon information and belief, to other students.

150.    IPS and its officials ignored obvious warning signs that TAYLOR:

A.    targeted A.H. and other Black male students;

B.    used her status as school counselor to groom and isolate A.H. and other Black male students;

C.    provided gifts and special treatment to A.H. and other Black male students;

D.    harassed, abused and committed other misconduct in the scope of her employment during school hours and on school premises in her office;

E.    was meeting with A.H. and other students outside of school premises without any safeguards;

F.    exhibited a pattern of leaving school premises without any restrictions;

G.    used her status as school counselor to assist A.H. in leaving school premises; and

H.    caused A.H. to be absent from class while IPS punished A.H. for these absences.

151.    IPS provided inadequate training and supervision in identifying warning signs of sexual abuse and how to respond to the said abuse.

152.     IPS ignored TAYLOR's widespread pattern of grooming A.H. and, upon information and belief, other students.

153.     IPS failed to provide adequate training on how to identify grooming of students.

154.     IPS and its officials' conduct amounts to a deliberate indifference to the safety of A.H.

155.     IPS and its officials failed to act despite obvious and repeated warning signs.

156.     IPS and its officials ignored known or obvious consequences of their failure to train or supervise its administrators and staff at Positive Supports Academy and thereby created a school atmosphere in which TAYLOR's abuse, harassment and discrimination flourished.

157.     Additionally, IPS adopted a widespread practice or custom of allowing TAYLOR to set her own policies for the Positive Supports Academy's counseling and guidance programs, thereby constituting a custom or usage with force of law.

158.     As a result of the aforementioned wrongful conduct, A.H. experienced anger and humiliation, suffered the loss of academic and career opportunities, and suffered other injuries and damages, some of which are permanent in nature.

**COUNT III - 42 U.S.C. § 1983 CLAIMS AGAINST TAYLOR**

159.     Plaintiff hereby repeats and alleges 1 through 125 and incorporates the same as if fully set forth herein.

160.     TAYLOR sexually abused, harassed, and otherwise discriminated against A.H. because of his gender and race in violation of A.H.'s right to equal protection pursuant to the Fourteenth Amendment to the United States Constitution, and in violation of A.H.'s right to be free from sexual abuse pursuant to the Fourteenth Amendment to the United States Constitution.

4823-3384-3284, v. 1

161.    IPS authorized or allowed TAYLOR to establish and create harmful practices for Positive Supports Academy's guidance and counseling programs.

162.    TAYLOR created a policy, custom, or practice of causing harm to A.H., and upon information and belief, to other students at Positive Supports Academy.

163.    TAYLOR used her status as a guidance counselor, and school employee, at Positive Supports Academy to manipulate, abuse and harass A.H. and, upon information and belief, other male students.

164.    TAYLOR's pursuit and eventual abuse and harassment of A.H. occurred during the school year, through the course of her employment as a guidance counselor and school employee, and on school premises during school hours.

165.    As a result of the aforementioned wrongful conduct, A.H. experienced anger and humiliation, suffered the loss of academic and career opportunities, and suffered other injuries and damages, some of which are permanent in nature.

## COUNT IV – NEGLIGENT SUPERVISION AND TRAINING

166.    Plaintiff hereby repeats and alleges paragraphs 1 through 125 and incorporates the same as if fully set forth herein.

167.    At all relevant times herein, school policies required, and Defendants IPS and FEREBEE admit they had, a duty to keep students safe and protect students within the district, to include students at Positive Supports Academy.

168.    At all relevant times herein, Defendants IPS and FEREBEE had a duty to supervise officials, counselors, teachers and other staff members.

169.    At all relevant times herein, Defendants IPS and FEREBEE had a duty to supervise students.

4823-3384-3284, v. 1

170.    At all relevant times herein, IPS required A.H. to attend school and also created

relationships between officials, counselors, teachers, or other staff members and students.

171.    At all relevant times herein, Defendants IPS and FEREBEE had a duty to properly

train and supervise its principals, teachers, and staff members, to include taking steps to

eliminate conditions or practices that violate, discourage or interfere with the ethics and laws

related to school counselors and ensuring practices that are consistent with the Ethical Standards

for School Counselors.

172.    At all relevant times herein, Defendant IPS had a duty not to employ teachers,

coaches, counselors, or other staff members whom IPS knew acted inappropriately with minor

students and who demonstrated a propensity toward committing unlawful acts against minor

students.

173.    At all relevant times herein, Defendants IPS and FEREBEE had a duty to take

steps to eliminate conditions or practices that encouraged or allowed harassment, sexual abuse,

or other misconduct by school counselors.

174.    At all relevant times herein, IPS, its officials and employees, and FEREBEE had a

duty to immediately report suspected child abuse or neglect to DCS.

175.    Defendants IPS and FEREBEE breached their duties as described herein and said

breaches constitute negligence.

176.    Despite identifying inappropriate conduct between TAYLOR and male students,

IPS and FEREBEE allowed TAYLOR to continue her employment as a school counselor at

Positive Supports Academy.

28

177.     Defendants IPS and FEREBEE acted negligently and it was reasonably foreseeable that their failure to implement reasonable prevention measures would cause harm to A.H. and other Positive Supports Academy students.

178.     Defendants IPS and FEREBEE acted negligently and it was reasonably foreseeable that their failure to train their teachers and staff to recognize signs of grooming, and other harassment or abuse, created a risk that behavior of the type that TAYLOR committed would occur.

179.     IPS and FEREBEE negligently failed to adequately supervise TAYLOR.

180.     IPS and FEREBEE negligently retained TAYLOR as the school counselor at Positive Supports Academy.

181.     IPS and FEREBEE negligently failed to train its staff, principals, teachers, and human resources professionals concerning inappropriate relationships between counselors and students and how to recognize and prevent sexual abuse and harassment.

182.     IPS, FEREBEE, and IPS officials and staff members failed to immediately report TAYLOR's abuse and harassment of A.H. to DCS.

183.     As a result of IPS's and FEREBEE's negligence, negligent hiring, and negligent supervision and retention of TAYLOR, A.H. suffered damages.

## VI.        Relief Requested

WHEREFORE, the Plaintiff, A.H., hereby seeks all relief available under the law, including:

A.       An award of damages to compensate A.H. for damages he sustained by the unlawful practices described above;

B.       Compensatory and consequential damages;

29

C.      Attorney fees and costs;

D.      Prejudgment and postjudgment interest; and

E.      Grant such further relief as the Court deems necessary and proper in the

public interest and pursuant to 42 U.S.C. § 1983.


Respectfully submitted,

DENSBORN BLACHLY LLP

*/S/ Eric D. Schmadeke*
Eric D. Schmadeke, Attorney No. 27329-49
DENSBORN BLACHLY LLP
500 E. 96th Street, Suite 100
Indianapolis, IN 46240
Telephone: (317) 669-0129
Facsimile:  (317) 218-3919
E-mail:      eschmadeke@dblaw.com

## DEMAND FOR JURY TRIAL

Plaintiff, A.H., by counsel, respectfully requests a jury trial for all issues deemed triable.

Respectfully submitted,

DENSBORN BLACHLY LLP

*/S/ Eric D. Schmadeke*
Eric D. Schmadeke, Attorney No. 27329-49

30